## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| WAREHOUSE INVESTORS, LLC, DIXON PROPERTIES - 3811, LLC, and 51st STREET PROPERTIES, LLC,<br><br>               Plaintiffs,<br>vs.<br><br>AFFILIATED FM INSURANCE COMPANY,<br><br>               Defendant. | Civil No.: 4:20-cv-00397-JAJ-HCA<br><br><br>PLAINTIFFS' BRIEF IN SUPPORT OF RESISTANCE TO DEFENDANT'S MOTION TO DISMISS |

**COME NOW** the Plaintiffs, by and through their undersigned attorney, and in support of their Resistance to Defendant's Motion to Dismiss states:

## TABLE OF CONTENTS

Table of Authorities ............................................................................................................. 3

Background and Facts Common to All Divisions ................................................................. 5

Resistance to Motion to Dismiss Argument ........................................................................ 7

  I.    Motion to Dismiss Legal Standard ............................................................................ 7

  II.   Argument ................................................................................................................... 8

       a.  Proper Service of Process had been effectuated prior to any

           responsive pleading being filed ........................................................................ 8

           i.     Service of the first Original Notice and Petition was proper ............... 9

           ii.    Service of Process has subsequently been effectuated again

                  in the manner preferred by Defendant ................................................. 11

       b.  Plaintiffs have proper standing to bring this lawsuit ..................................... 12

           i.     Plaintiffs possess a valid contractual claim by and through

                  a valid Assignment ............................................................................. 12

           ii.    Dixon had a contractual relationship with Affiliated through

                  which the assigned claims made herein properly accrued ................... 14

iii.     Plaintiffs' claims are not limited to contract ............................................ 18

c.  Plaintiffs' Petition and claims are ripe, this Court has subject matter jurisdiction of this action, and this claim should not be dismissed under Federal Rule Civil Procedure 12(b)(1) .................................................. 19

d.  Plaintiffs allegations state valid claims upon which relief may be granted and Affiliated is therefore not entitled to dismissal under Fed. R. Civ. P. 12(b)(6) ...................................................................................... 23

e.  Response to request for a more definite statement ........................................ 26

III.    Conclusion ............................................................................................................ 26

# TABLE OF AUTHORITIES

## CASES

*Blew v. Powers*, 136 N.W.2d 273 (1965)...................................................................8

*Brunkhorst v. Iowa Pub. Employees' Ret. Sys.,* 759 N.W.2d 812
(Iowa Ct. App. 2008)........................................................................................7

*Butler v. Capitol Federal Sav.*, 904 F. Supp. 1230. (D.Kan.1995) .......................... 23

*Conley v. Gibson,* 355 U.S. 41 (1957) .................................................................... 23

*Continental Collieries, Inc. v. Shober*, 130 F.2d 632 (C.C.A3d 1942)...........................23,25

*Cutler v. Klass, Whicher & Mishne,* 473 N.W.2d 178, 181 (Iowa 1991)...............7,14,18,20

*Da Silva v. Kinsho International Corp.,* 229 F.3d 358 (2d Cir. 2000).................................. 22

*Fireman's Fund Ins. Co. v. ACC Chemical Co.,* 538 N.W.2d 259,
262 (Iowa 1995)............................................................................................ 20

*Franklin v. Booner,* 207 N.W. 778, 781 (1926) ........................................................8

*Grannis v. Ordean,* 234 U.S. 385, 394 (1914)..........................................................8

*Henschel v. Hawkeye-Security Insurance Company*, 178 N.W.2d
at 416 (Iowa 1970) ....................................................................................... 20

*Hoekstra v. Farm Bureau Mut Ins. Co.,* 382 N.W.2d 100, 109 (Iowa 1986)...................... 20

*Hron v. Ryan,* 164 N.W.2d 815, 819 (Iowa 1969)...............................................8,11

*Jon & Dave v. Society Ins*., 998 F. Supp2d 783 (N.D. Iowa 2014) ................................ 19

*Ke-Wash Co. v. Stauffer Chem. Co*., 177 N.W.2d 5, 9 (Iowa 1970) ........................7

*Lotes Co. Ltd. v. Hon Hai Precision Industry Co.,* 753 F.3d 395,
405 ( 2nd Cir 2014)........................................................................................ 20

*Midwest Dredging Co. v. McAninch Corp.*, 424 N.W.2d 216, 224 (Iowa 1988)............... 16

*Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998)... 19

*Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950)..........................8

*Reed Elsevier, Inc. vs. Muchnick*, 559 U.S. 154, 161-166 (2010).......................... 22

*Rieff v. Evans,* 630 N.W.2d 278, 284 (Iowa 2001).......................................................7

*RPC Liquidation v. Iowa Dept. of Transp.,* 717 N.W.2d 317, 320 (Iowa 2006)................ 16

*Vogan v. Hayes Appraisal Assocs., Inc,* 588 N.W.2d 420, 423 (Iowa 1999)...................... 16

*Watsco, Inc. v. Henry Valve CO*., 232 F. Supp. 38 (D.C.N.Y. 1964)................................. 23

**<u>STATUTES</u>**

RI Gen L § 7-1.2-503 ..................................................................... 10

28 U.S.C. § 1332 (a) ..................................................................... 21

**<u>RULES</u>**

230-RICR-20-60-9.6 (2020) ...........................................................9,10

Fed. R. Civ. P. 8(2) ..................................................................... 23

Fed. R. Civ. P. 12(b)(6) ...........................................................23,26

Fed. R. Civ. P. 15(a)(2) ..................................................................... 26

Iowa R. Civ. P. 1.305(6) ...........................................................9,11

Iowa R. Civ. P. 1.403 ...........................................................23,25

Iowa R. Civ. P. 1.403(1) ..................................................................... 23

## BACKGROUND AND FACTS COMMON TO ALL DIVISIONS

On or about the 1st day of June 2018, the Defendant entered into and duly executed a valid Contract to insure real and other property (See *Exhibit A to Petition*). The location and property covered by and under the Contract included the following parcels: 3811 Dixon Street, Des Moines, Iowa 50313; 3901 Dixon Street, Des Moines, Iowa 50313; 1675 NE 51st St., Des Moines, Iowa 50313. The purpose and intent of this Contract was to insure and cover the above-described real properties and other included property against ALL RISKS OF PHYSICAL LOSS OR DAMAGE. (See *Exhibit A to Petition*; P. 34).

The owner of the properties at the time was Dixon Des Moines Warehouses, LLC (hereinafter "*Dixon*"). National Asset Services (hereinafter "*NAS*") is a national commercial real estate and asset management company that manages properties and portfolios of properties for owners thereof. As part of the management services it provides to its clients, NAS in some instances procures insurance for the various commercial properties it manages. At the time of the losses which give rise to the claims made in Plaintiffs' Petition, NAS was managing the properties at issue here, which were then owned by Dixon. As part of its Management thereof, NAS procured the insurance coverage described herein above. NAS frequently enters into insurance contracts with Affiliated on behalf of owners it represents to insure properties that it does not own. This is by agreement and consent of, and is standard practice, for both NAS and Affiliated. Affiliated knew that the properties at issue here were owned by Dixon and managed, but not owned in whole or in part, by NAS. With such knowledge Affiliated agreed to insure and indemnify the property and owner thereof against covered losses.

5

During the policy term, on or about the 1st day of September of 2018 and the 16th day of May 2019, the above-described real properties sustained substantial hail, wind, storm, and other damages. Such losses were losses covered under the contract by Affiliated As a result, claims accrued in favor, and inured to the benefit, of Dixon. Dixon thereafter sold the properties at issue to the Plaintiffs herein. As a material term and inducement of such sale, Dixon also assigned the claims herein being brought by the Plaintiffs. Plaintiffs now bring this action to enforce its valid and existing legal claims against Defendant.

Affiliated herein has denied responsibility, disputed coverage and the valuation of losses, and delayed at every juncture with respect to these claims. Accordingly, the Plaintiffs had no choice but to seek enforcement of their rights through the civil justice system. This Defendant now goes to the extraordinary length of not only seeking to avoid adjudication on the merits, but even litigation on the merits. This Defendant not only desires to prevent a fact finder from ever considering its actions in breach of its insurance Contract, but endeavors to preclude the aggrieved parties from even having access to the civil justice system at all. The various arguments herein raised are, when viewed in the best light, are premature. More pointedly, at this stage, they are without merit and not supported by the applicable law or the facts and circumstances of this controversy. Defendant's Motion should be summarily denied.

**MOTION TO DISMISS**

## I.  LEGAL STANDARD

"A motion to dismiss should not be liberally granted." *Rieff v. Evans*, 630 N.W.2d 278, 284 (Iowa 2001), *as amended on denial of reh'g* (July 3, 2001). A motion to dismiss is sustainable only where it appears to a certainty a plaintiff would not be entitled to any relief under any state of facts which could be proved in support of the claims asserted by him. *Ke-Wash Co. v. Stauffer Chem. Co.*, 177 N.W.2d 5, 9 (Iowa 1970).  As the Court said in *Cutler v. Klass, Whicher & Mishne,* 473 N.W.2d 178, 181 (Iowa 1991):

> [W]e certainly do not recommend the filing of motions to dismiss in litigation, the viability of which is in any way debatable. Neither do we endorse sustaining such motions, even where the ruling is eventually affirmed. Both the filing and the sustaining are poor ideas.
>
> The reasons are clear enough. In the first place, in filing a motion to dismiss, a defendant gives away all the facts because in ruling on the motion well-pled facts are assumed to be true. Combined with this venerable rule is a more recent one. Under notice pleading a suit will survive a motion to dismiss whenever a valid recovery can be gleaned from the pleadings.
>
> We recognize the temptation is strong for a defendant to strike a vulnerable petition at the earliest opportunity. Experience has however taught us that vast judicial resources could be saved with the exercise of more professional patience. Under the foregoing rules dismissals of many of the weakest cases must be reversed on appeal. Two appeals often result where one would have sufficed had the defense moved by way of summary judgment, or even by way of defense at trial. From a defendant's standpoint, moreover, it is far from unknown for the flimsiest of cases to gain strength when its dismissal is reversed on appeal.

(Citations omitted.); *Brunkhorst v. Iowa Pub. Employees' Ret. Sys.,* 759 N.W.2d 812 (Iowa Ct. App. 2008)  Very little is required in a petition to survive a motion to dismiss. *Reiff v. Evans*, 630 N.W.2d 278, 284 (Iowa 2001) (citations omitted).

## II.    ARGUMENT

### a. <u>Proper Service of Process had been effectuated prior to any responsive pleading being filed.</u>

At the outset, it is important to note the purpose of proper service of notice. Original Notice is a requirement of due process. "The fundamental requisite of due process of the law is the opportunity to be heard." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950), quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914). "The essentials of due process are satisfied if the notice is one which is reasonably calculated to come to the defendant's attention and to give him an opportunity to defend the action, if he desires to do so." *Hron v. Ryan*, 164 N.W.2d 815, 819 (Iowa 1969), citing *Franklin v. Booner*, 207 N.W. 778, 781 (1926), *Blew v. Powers*, 136 N.W.2d 273 (1965).

Very notably, Affiliated does not complain that it did not receive *actual notice* of the Complaint. (Emphasis added). Its complaint instead focuses on a perceived technicality in the interplay between Iowa and Rhode Island law. Its complaint also turns out to be based on a misinterpretation and misapplication of the law. Regardless and to be clear, Affiliated has, and at all times material hereto had, actual notice of this action. In fact, Defense Counsel contacted the undersigned before any responsive pleading was even due when this action was still in Iowa District Court to request an extension to respond, to which the undersigned readily agreed. This would not have been possible if the Defendant did not receive timely notice of the action. The essentials of due process were satisfied when Plaintiffs reasonably calculated actions came to the Defendant's attention and gave them a timely and full opportunity to defend this action. The spirit and purpose of the

service requirement and due process were met and fulfilled. As is clear and set forth below, so were the legal requirements.

### i. Service of the first Original Notice and Petition was proper.

The Plaintiffs properly effectuated personal service upon Defendant by timely serving process under both Iowa and Rhode Island law. The Defendant properly cites Rule 1.305(6) as prescribing the method by which corporations are to be served under Iowa law:

> "by serving any present or acting or last known officer thereof, or any general or managing agent, ***or any agent or person now authorized*** by appointment or ***by law to receive service*** of original notice..."

The Defendant then concedes that the Plaintiffs served the Rhode Island Secretary of State. The Defendant does not then complain about timeliness or manner of such service. However, the Defendant apparently complains that the Rhode Island Secretary of State is not an agent or person authorized by law to receive service under Rule 1.305(6). The Defendant simply misunderstands Rhode Island law.

The Defendant argues that the Plaintiffs served the "Department" and cites 230-RICR-20-60-9.6 (2020) of the Rhode Island Administrative Code for the proposition that service of process upon the "Department" is not allowed on domestic service companies like Affiliated FM:

> "[t]he Department is not statutorily authorized to and will not accept service of process on . . ." domestic insurance companies, like Affiliated FM.

This is generally a correct cite to the Rhode Island Administrative Code. However, it is inapplicable here.

The Defendant apparently failed to understand that the "Department" referred to in said code section was the *Department of Business Regulation*, not the Secretary of State (emphasis added). See Title 230 of the Rhode Island Administrative Code entitled "Department of Business Regulation." So, while the Defendant is generally correct that in Rhode Island, the Department of Business Regulation is not authorized generally under the Administrative Code to accept service on behalf of a domestic insurance company, the Plaintiffs did not ever serve or attempt to serve the "Department."

To the contrary, Plaintiffs first endeavored to serve the registered agent pursuant to 230 RICR 20-60-9.6. (See attached "Exhibit A" *Affidavit of Melissa Page*). The Defendant agrees this is the proper agent with whom to start service efforts. (See *Def Memo* P. 4) However, a registered agent was unavailable to be served for two reasons: 1) an agent was not properly designated as expressly required by 230 RICR 20-60-9.6; and 2) the business was closed due to the Rhode Island stay-at-home mandate in effect at the time because of the pandemic. (See "Exhibit A" *Affidavit of Melissa Page* ¶ 9-10). Accordingly, the Rhode Island Code prescribes the proper manner of service to be upon the Rhode Island Secretary of State whenever a registered agent is unappointed or unavailable:

> "(b) Whenever a corporation fails to appoint or maintain a registered agent in this state, or whenever its registered agent cannot with reasonable diligence be found at the registered office, then the secretary of state is an agent of the corporation upon whom any process, notice, or demand may be served."

(RI Gen L § 7-1.2-503)

According to the foregoing, Affiliated FM's registered agent was both unappointed and unable to be found at the registered office with reasonable diligence since it was closed.

So, Plaintiffs' process server, in compliance with Rhode Island statute, then served the Secretary of State for Rhode Island.

This is further corroborated by the fact that the Secretary of State accepted service and mailed a copy of the Summons and Compliant via certified mail on December 2, 2020, in compliance with Title 7 of the General Law of the State of Rhode Island. (See attached "Exhibit B" *Letter from R.I. SOS*) The Plaintiffs followed Rhode Island law to effectuate service upon an authorized agent and in doing so complied with Iowa R. Civ. P. 1.305 as well. According to the foregoing, timely and proper service has been effectuated in this action and the argument to the contrary is without merit.

      **ii. Service of Process has subsequently been effectuated again in the manner preferred by Defendant.**

As is set forth above, the purpose of personal service generally is to ensure that due process is afforded to all defendants and that they receive actual notice of any controversy affecting their rights. *Hron* at 819. In Iowa, Courts are reluctant to throw out civil actions on technical service arguments, even if they were legally supported and correct, particularly if the Defendant has actual notice of the action. Regardless, out of an abundance of precaution, Plaintiffs have endeavored to and have now had Defendant served in the manner it prefers, in addition to the proper Rhode Island process. Accordingly, service of process has been effectuated upon the Iowa Commissioner of Insurance. (See attached "Exhibit C" *Return of Service*.)

The Defendant askes that this action be dismissed for improper service despite having received proper timely service and having actual notice of the action. The remedy

of dismissal is not even the proper or preferred remedy for lack of service in Iowa. Upon a plaintiff exceeding 90 days, Courts in Iowa do not summarily dismiss an action but instead enter an order expediting prosecution or otherwise ordering service to be effectuated within a certain time. Accordingly, service upon the Iowa Commissioner would remedy any service issue even if it ever existed, and the issue is now moot. For all these reasons the Defendant's complaints about service of process are without merit and its Motion to Dismiss on this basis should be denied.

### b. **Plaintiffs have proper standing to bring this lawsuit.**

#### i. **Plaintiffs possess a valid contractual claim by and through a valid Assignment.**

Defendant's first complaint regarding standing attacks the propriety of, and allegations regarding, the assignments. Defendant argues "[Plaintiffs] do not allege that the basis for their claims flow from any proper assignment from National Asset Services." This allegation is simply untrue and contrary to the Petition and Assignment itself. The Plaintiffs' allege in pertinent part in their Petition as follows:

17. "From the beginning of the term of the policy up through and including the above-referenced dates of loss the property was owned by Dixon Des Moines Warehouses, LLC a limited liability company formed and registered in Iowa.

18. At all times material hereto, Dixon Des Moines Warehouses, LLC, was managed and represented by its duly authorized representative and agent, National Asset Services, Inc.

19. According to the Contract, upon accrual of the claims, the Defendant owed a valid and enforceable debt thereon.

21. Following accrual of the damages and claims, on or about May 15, 2020, Dixon Des Moines Warehouses, LLC, the previous owner and beneficiary of the accrued claims and debts, transferred and assigned all of its rights, title,

and interest in and to these claims and debts to the Plaintiffs herein (See attached "Exhibit B").

(*Petition* ¶ 17-19, 21)

The Assignment states as follows:

## ASSIGNMENT OF INSURANCE CLAIM

The undersigned, Dixon Des Moines Warehouse, LLC, herein known as ASSIGNOR, and Warehouse Investors, LLC, herein known as ASSIGNEE, for valuable consideration, hereby mutually acknowledge, intend to be legally bound, and irrevocably transfer & assign to ASSIGNEE, all of the rights, title and interest of the undersigned ASSIGNOR for those insurance claim(s) brought forth with ASSIGNOR designated under Claim # 500364 with Affiliated FM Insurance, herein known as CARRIER, covering the direct physical loss sustained at ASSIGNEE'S property, located at 3901 Dixon Ave. Des Moines, IA ASSIGNOR'S ownership of ASSINGEE'S claim includes, but is not limited to, any and all insurance claim asserted above and the proceeds thereof.

IN WITNESS WHERE OF, the undersigned have caused this transfer and assignment of insurance claim to be duly executed this _____ day of _____. 201__.

ASSIGNOR
By: National Asset Services, Inc.,
    Authorized Representative
Name By: Carol Scott, VP/Mng Dir.

Signature _Carol Scott_

Date: May 15, 2020

ASSIGNEE
Warehouse Investors, LLC
Name Troy Strawbecker

Signature _[signature]_

Date: May 5, 2020

The Petition specifically articulates that Dixon possessed valid and enforceable claims that were assigned by its duly authorized agent, NAS, according to the express terms of the assignment:

"ASSIGNOR
By:    National Asset Services, Inc.

13

Authorized Representative"

If true, Dixon had valid and enforceable claims which it properly assigned to Plaintiffs herein. These facts, as pleaded, must be taken as true. *Cutler* at 181 (Iowa 1991). As such, Defendant complains with standing surrounding the Assignment fail as a matter of law, particularly at this stage of the litigation.

### ii. Dixon had a contractual relationship with Affiliated through which the assigned claims made herein properly accrued.

Next, Defendant argues in effect, that Plaintiffs have alleged no contractual relationship between Dixon and Affiliated and therefore Dixon itself had no proper claims to assign. Defendant argues:

> "The Petition does not allege that Dixon Des Moines Warehouses is a "wholly or majority owned subsidiary" of National Asset Services, but instead alleges that National Asset Services is its "duly authorized representative and agent." (Id. at ¶ 18.) The relationship alleged, therefore, does not bestow upon Dixon Des Moines Warehouses, LLC "named insured" status."

> The argument continues in pertinent part in Footnote 2:

> "National Asset's *ownership* of Dixon Des Moines Warehouses is required before it can be considered a named insured under the policy. (*Id.*, at P. 26 of 111). The Petition, therefore, does not sufficiently allege a relationship between National Asset and Dixon to establish coverage under the Affiliated FM policy.

In other words, the Defendant argues that NAS does not own Dixon and therefore Dixon had no rights under the Contract. To have any contractual rights at all, Defendant argues the insured must be expressly named as the insured party or, in the alternative, be owned by the named party. NAS was the named insured on this Contract and Dixon is not wholly or majority owned by NAS and therefore, according to Defendant's argument, Dixon is not

a party to the Contract and cannot possess a claim. This argument fails for a number of reasons both legally and factually.

First, while focusing the Court's attention solely on the phrase "wholly or majority owned subsidiary[ies]", the Defendant chooses to leave out the remainder of the paragraph in the Insurance Contract that defines "named insureds":

**NAMED INSURED:**

National Asset Services, and its wholly or majority owned subsidiaries _**and any interest which may now exist or hereinafter be created or acquired**_ _**which are**_ owned, _**controlled, or operated by any one or more of those named insureds.**_  (emphasis added)

The assigned claims at issue here were clearly an interest that was "hereinafter created or acquired which [were] controlled or operated by one or more named insured," namely NAS.  As such, the plain language of the Contract expressly includes named insured status for another interest holder when such interest is controlled by NAS. This is what precisely occurred here. NAS, as representative and agent for Dixon, controlled Dixon's interests and thereby Dixon has an insured interest and standing to make a claim.

Also, on this point, Plaintiffs believe there may well exist additional documents that will be exchanged in discovery which will expressly or impliedly include, name, or reference Dixon as a named insured. Of course, what documents exist and each party possesses, is not possible to know at this stage which again supports Iowa's position that pre-answer motions to dismiss are strongly disfavored. Regardless, all Plaintiffs have to do to survive this argument is plead NAS entered into an Insurance Contract on behalf of

Dixon with Affiliated to insure its properties, which it has done. (See *Petition* ¶¶ 11-21). Taken as true, Dixon has standing under the Contract and Defendant's Motion fails on this point.

Secondly, irrespective of its status as an express named insured under the Contract, and even if it were somehow found not to be a party or otherwise an insured, Dixon is a third-party beneficiary of the Contract and therefore has enforceable rights under Iowa law as well. The well-established rule in Iowa is that:

> " '[a] third party who is not a promisee and who gave no consideration has an enforceable right by reason of a contract made by two others ... if the promised performance will be of pecuniary benefit to [the third party] and the contract is so expressed as to give the promisor reason to know that such benefit is contemplated by the promisee as one of the motivating causes of his making the contract.' "

*RPC Liquidation v. Iowa Dept. of Transp.,* 717 N.W.2d 317, 320 (Iowa 2006) (citing *Vogan v. Hayes Appraisal Assocs., Inc.,* 588 N.W.2d 420, 423 (Iowa 1999) (additional citations omitted). The primary question in a third-party beneficiary case is whether the Contract manifests an intent to benefit a third party. Id. This is consistent and in accordance with the Restatement of Contracts on third-party beneficiaries which was expressly adopted by the Iowa Supreme Court in *Midwest Dredging Co. v. McAninch Corp.*, 424 N.W.2d 216, 224 (Iowa 1988).

Under the Contract, specifically Page 11, *Location Schedule I*, the three properties owned by Dixon at the time are specifically memorialized as insured and indexed by Affiliated:

## Location Schedule I

**Location Schedule**

3. 3811 Dixon Street, Des Moines, IA, 50313, Index No. 068742.16
4. 3901 Dixon Street, Des Moines, IA, 50313, Index No. 068742.16
5. 1675 NE 51st St., Des Moines, IA, 50313, Index No. 068760.50

As such, it is inarguable that the policy was for the benefit of the owner of these properties, Dixon. The Contract clearly and expressly manifests an intent to benefit the owner of these properties.

Once again, as alleged in the Petition including the paragraphs set forth herein above, Dixon was the owner of the properties, and NAS, as its agent, obtained insurance coverage for the properties on its behalf. Claims accrued in favor of Dixon when damage was incurred, and as the beneficiary and owner of such claims, Dixon assigned its right, title, and interest therein to Plaintiffs. These facts, when considered true, form the basis of a third-party beneficiary claim even if Dixon was somehow not a named insured.

Lastly, should Defendant's argument be followed to its logical end, it is very notable that the absurd result would be to nullify the property owner's rights under each and every Contract which names NAS (or any other agent) as the named insured. Upon information and belief, Affiliated insures hundreds of parcels that are managed, but not "wholly or majority owned" by NAS, but that name NAS as the insured. If it is truly Defendant's

position that property owners have no interest in the contracts that insure their properties because of how Affiliated drafted them and named the insured party, there are likely an extraordinary number of property owners who have paid premiums improperly without receiving any return, consideration, or indemnification. It is highly unlikely that the Defendant's 30(b)(6) representative will testify that it does not actually cover or insure property owners for the properties Affiliated insures for NAS. If he or she were to so testify, this Court might expect substantial additional litigation on the matter.

One final point, to the extent Affiliated claims that it did not consent to the transfer, that argument is nothing more than an unsubstantiated claim and a red herring at this point. As is set forth above, a defendant gives away all the facts and the facts pled are considered true. *See Cutler* at 181. Plaintiffs contend the assignment was proper and that Dixon and NAS transferred all rights, title, and interest to any claims it had against Affiliated, which must be taken as true. (*Petition* ¶ 21). Regardless, this is a perfect example of why this case needs discovery to fully adduce the facts and circumstances of the claims and defenses. Many of the fact questions that arise as a result of these arguments may be answered by and through discovery. This is precisely why courts strongly disfavor Motions to Dismiss and instead much prefer adjudication on the merits following a full and fair opportunity for discovery.

### iii. Plaintiffs' claims are not limited to contract.

Once again, the Defendant leaves out additional and very important language when arguing the claims are limited to contract. The Assignment specifically references all right,

title, and interests to the claims. However, it goes on to set forth that the Assignment

"***includes but is not limited to any and all insurance claim asserted above***" (Emphasis added). It is specifically by its terms not limited to merely the insurance claims. Again, at a bare minimum, discovery needs to be completed on the issues to flush out the facts and circumstances surrounding the Assignments.

### c. Plaintiffs' Petition and claims are ripe, this Court has subject matter jurisdiction of this action, and this claim should not be dismissed under Federal Rule of Civil Procedure 12(b)(1).

Defendant next complains that Plaintiffs did not substantially perform its conditions precedent prior to filing suit. It goes on to argue that because, in its unilateral view it denies such performance occurred, the claim is not "ripe' and therefore this court has no subject matter jurisdiction of this action. Here, what the Defendant is actually doing is simply denying a prima facie element has occurred and then attempting to pound that square peg denial into the round hole of a jurisdictional attack. Conflating a jurisdictional attack with a general denial of a fact question for the jury is creative. Unfortunately for Defendant, denying one prima facie element of a cause of action does not and could not ever operate to divest this Court of its legal ability to hear a civil action.

The elements of a breach of contract claim are 1) the existence of a contract; 2) the terms and conditions of the contract; 3) substantial performance of the terms and conditions by Plaintiff; 4) breach by Defendant; and 5) damages caused by breach. See *Jon & Dave v. Society Ins*., 998 F. Supp2d 783 (N.D. Iowa 2014) (citing *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998). The Defendant denies that Plaintiff has substantially performed some of its conditions precedent, and of course

Defendant has every right to assert such a denial. (*Def. Memo* P. 10.) However, Defendant then makes the extraordinary leap to claim, based solely on its mere allegation that Plaintiffs' performance was insufficient, that this Court has no subject matter jurisdiction over of the action. The claim is nonsensical and contrary to the law.

First, while Defendant's claim that Plaintiffs have failed to substantially perform, Plaintiffs claim they have:

> "20.    All interested Parties, including but not limited to, Dixon Des Moines Warehouses, LLC by and through its authorized agents, representatives, and/or assignees performed all conditions precedent and other material obligations under the Contract." (*Petition* ¶ 20)

As is set forth previously, Plaintiffs allegations must be taken as true. *Cutler* at 181. Accordingly, all of Defendant's alleged complaints regarding Plaintiffs performance are of no consequence or effect whatsoever. Plaintiffs averment alleging substantial performance renders Defendant's argument on this point meritless.

Additionally, non-performance can be raised only as a general denial of a prima facie element or even as an affirmative defense. See *Henschel v. Hawkeye-Security Ins. Co.* It is never a jurisdictional matter. Further, it is not even a question of law to be decided by the Court at any time, much less on a pre-answer motion. It is a question of fact to be decided by a jury. *Hoekstra v. Farm Bureau Mut Ins. Co.,* 382 N.W.2d 100, 109 (Iowa 1986); *Henschel v. Hawkeye-Security Insurance Company*, 178 N.W.2d at 416 (Iowa 1970); *Fireman's Fund Ins. Co. v. ACC Chemical Co.* 538 N.W.2d 259, 262 (Iowa 1995). Specifically, the question of sufficiency of notice provided to an insurer by insureds as a

condition precedent to recovery is a fact question for a jury. See Id. ("Ordinarily, the question of whether a notice has been reasonably given is one of fact for the jury.") Notably, the cases cited by Defendant in purported support of its proposition that substantial compliance with a condition precedent must be "shown," are in the context of appellate courts reviewing sufficiency of the evidence submitted of such compliance *at trial*. (Emphasis added). Of course, a plaintiff has to prove the element of its case at trial. However, none of those cases stand for the proposition that performance of a condition precedent can be raised as a jurisdictional attack on an action or the petition itself. The Defendant cites no such authority because no such authority exists.

The foregoing disposes of this Count of Defendant's Motion. However, it is important to note that the Defendant is the one that invoked and affirmatively represented to this Court that it has proper subject matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332 (a):

> "5. Removal is proper because the Court has subject matter jurisdiction based on complete diversity of citizenship between the parties under 28 U.S.C § 1332 (a)" (*Def. Notice of Removal* ¶ 5)

This is a correct statement of the law. The Court enjoys jurisdiction of this controversy not due to nature of the case as a contract case or any federal question, but solely due to diversity. Now, the Defendant asks the Court to divest itself of the same jurisdiction the Defendant used to choose this forum in the first place and readily admitted to this Court it had in the *Notice of Removal* pleading it filed immediately preceding its Motion to Dismiss. Attacking subject matter jurisdiction now is illogical, contrary to its own representation to this Court, and unsupported by any law or authority in this jurisdiction or elsewhere.

Lastly, even if a contract case were somehow a federal question, which of course it is not, a condition precedent still would not be a jurisdictional issue subject to attack by the Defendant. It is a rare instance indeed when a lack of a precondition can divest a Federal Court of jurisdiction, even in a federal question case. In fact, even when a Federal Statute mandates a requirement or action as a precondition of suit, it is not generally a jurisdictional prerequisite to suit unless specifically and expressly delineated as such by Congress. *Reed Elsevier, Inc. vs. Muchnick*, 559 U.S. 154, 161-166 (2010). Accordingly and for example, the Federal Copyright Act's registration requirement as a precondition to filing suit does not divest Federal Court's subject matter jurisdiction, even on a case involving, and in Federal Court because of, that specific federal question. Id. As another example, the threshold number of employees [15] for application of Title VII in a federal employment discrimination civil rights claim, is not a jurisdictional issue, at least as long as the plaintiff makes a non-frivolous claim that the defendant is a covered employer. *Da Silva v. Kinsho International Corp.,* 229 F.3d 358 (2d Cir. 2000). As another example, the Foreign Trade Antitrust Improvements Act limitations on claims involving foreign commerce were substantive and not jurisdictional. *Lotes Co. Ltd. v. Hon Hai Precision Industry Co.,* 753 F.3d 395, 405 ( 2nd Cir 2014). The list could go on, but the point is clear, conditions precedent, particularly in the context of a contract action, are never a jurisdictional issue for the court. For these reasons, the Defendant's Motion on this Count should be denied.

**d.  Plaintiffs allegations state valid claims upon which relief may be granted and Affiliated is therefore not entitled to Dismissal under Fed. R. Civ. P. 12(b)(6).**

Both Iowa R. Civ. P 1.403 and its Federal counterpart, Rule 8, codify a notice pleading in each respective jurisdiction. Both require only "a short and plain statement of the claim showing that the pleader is entitled to relief" Iowa R. Civ. P. 1.403(1) and Fed. R. Civ. P. 8(2). Notice pleading was expressly adopted in Iowa in 1976. Id. The even longer standing Federal Rule on notice pleading in particular, seeks primarily to avoid technicalities.  Iowa R. Civ. P.  1.403 Official Comment citing *Watsco, Inc. v. Henry Valve CO.* 232 F. Supp. 38 (D.C.N.Y. 1964).  All that is necessary is brevity, conciseness, and clarity. Id.  Pleadings are liberally construed under Federal Rule 8 and a complaint is not subject to dismissal unless it appears to a certainty that no relief can be granted under any set of facts which can be proved in support of its allegations. *Conley v. Gibson* 355 U.S. 41 (1957).  In ruling on a motion to dismiss for failure to state claim, the Court must assume truth of all well-pleaded facts in plaintiff's complaint and view them in light most favorable to plaintiff; in addition, all reasonable inferences must be indulged in favor of plaintiff and pleadings must be liberally construed. *Butler v. Capitol Federal Sav.*, 904 F. Supp. 1230. (D.Kan.1995).  Moreover, the Federal Rules only require a pleading give the opposing party fair notice of the nature and basis of the claim and a general indication of the type of litigation involved. Iowa R. Civ. P. 1.403 Official Comment citing *Continental Collieries, Inc. v. Shober* 130 F.2d 632 (C.C.A3d 1942).

The present action arises from a Contract. The following matters are inarguably not in dispute based upon the concessions and admissions made by Defendant in its responsive pleadings:

1) On the dates in question, September 1, 2018, and May 16, 2019, "National Asset Services, Inc. held a policy of insurance with Defendant Affiliated FM Insurance Company (*Defendant's Memo* P.1);

2) A true and correct copy of the Contract was attached to the Petition which is cited verbatim as true and correct authority throughout Defendant's argument (*Defendant's Memo*);

3) The policy provided coverage for and "specifically identifies the real properties at issue in this litigation as "covered properties." (*Defendant's Memo* P.1) (*Petition Exhibit A*, P. 27);

4) The Defendant received a claim for hail damage from May 16, 2019 on the property at issue and attached said true and correct copy of the same to its declaration from its own attorney (*Def Declaration* ¶ 3);

5) The claims were assigned from Dixon and executed by NAS on its behalf, and a true and correct copy of the Assignments were attached to Plaintiff's Petition:

"Affiliated FM acknowledges that a representative of National Asset Services executed the assignments attached to the Petition on behalf of Dixon Des Moines Warehouses." (*Defendant's Memo* P.7);

6) The Defendant engaged in correspondence, adjustment activities, and estimate and valuation activities throughout 2020 on these claims (*Def Declaration* ¶¶ 4-9);

7) Despite all the foregoing, Affiliated has not remitted any payment on the claims made herein; and

8) Affiliated itself goes so far as to admit in its Memo that "no denial has taken place and Affiliated FM continues to investigate and evaluate the scope of loss claimed by Plaintiffs." (*Defendant's Memo* P.12).

The Defendant knew precisely what claims, contracts, and parties are involved and why. Despite all the foregoing, the Defendant comes before this Court and audaciously claims that it has insufficient information to know the grounds upon which the claims rest. This is nonsensical based upon the Petition by itself, but more so once supported by the admissions and concession Defendant itself has made in its pleadings.

Once again, the Federal Rules only require a pleading give the opposing party fair notice of the nature and basis of the claim and a general indication of the type of litigation involved. Iowa R. Civ. P. 1.403 Official Comment citing *Continental Collieries, Inc. v. Shober,* 130 F.2d 632 (C.C.A3d 1942). To be sure, the Defendant disputes the legal consequences of its actions and some of the facts. It disputes that it has breached the Contract, at least, as of yet. It further disputes that the facts rise to the level of bad faith. It disputes some conditions precedent including the sufficiency and timing of notices provided under the Contract. However, there is no dispute or lack of clear understanding regarding what Contract is at issue, what Assignments are at issue, what claims are at issue,

or who the parties are. The requirements of notice pleading have clearly been met. The Defendant has notice and actual knowledge of the bases of the claims and the type of litigation involved both through the Petition, exhibits, and its own concessions. Affiliated is not entitled to dismissal under Fed. R. Civ. P. 12(b)(6) and Count III of the Motion should be denied.

### e. **Response to request for a more definite statement.**

As is set forth above, the Plaintiffs' Petition is facially and substantively sufficient pursuant to the Rules. As such, no further pleadings or amendments are necessary at this time. As discovery commences, plaintiffs generally enjoy a liberal right to amend pleadings to conform to the facts adduced during discovery, when justice so requires. Fed R. Civ P. 15(a)(2). It would seem prudent to wait until additional facts and discovery become available to determine the necessity of amending the Petition.

However, should the Court find it helpful or necessary for the Plaintiffs to further explicate any particular division of its Petition, Plaintiffs are willing and happy to do so. Ordering a more definitive statement would be the most, and in Plaintiff's view only, reasonable, efficient, and just remedy to address any perceived defects in the Petition presently. To the extent the Court would find helpful a more definite statement for any part of its Petition, Plaintiffs are ready, willing, and agree to do so.

### CONCLUSION

Plaintiffs have effectuated good and proper legal service as well as actual notice of the suit. The Plaintiffs have alleged and have standing and state sufficient and proper claims against the Defendant. This Court also has subject matter jurisdiction and the Plaintiffs

have stated and brought valid legal claims against the Defendant. Therefore, and for the reasons stated above, there exists no good cause shown for the extraordinary remedy of dismissing the Petition and the Defendant's Motion should be summarily denied on all Counts.

Respectfully Submitted,

*GOURLEY, REHKEMPER & LINDHOLM, PLC*

_____
Cory F. Gourley                AT0002966
440 Fairway Drive, Suite 210
West Des Moines, IA 50266
Telephone: (515) 226-0500
Facsimile: (515) 244-2914
cfgourley@grllaw.com
**ATTORNEY FOR PLAINTIFFS**

Original filed via CM/ECF.

Copy to:

Timothy S. Poeschl                                    [  ] U.S. Mail
Grotefeld, Hoffmann, Gordon, Ochoa & Evinger          [  ] Express Mail
150 South Fifth Street, Ste. 3650                     [  ] Facsimile Transmission
Minneapolis, MN 55402                                 **[X] CM/ECF Electronic Filing**
tpoeschl@ghlaw-llp.com                                [  ] E-Mail
**ATTORNEY FOR DEFENDANT**

_____
Cory F. Gourley

EXHIBIT

A

tabbles*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| WAREHOUSE INVESTORS, LLC, DIXON PROPERTIES - 3811, LLC, and 51st STREET PROPERTIES, LLC, <br><br> Plaintiffs, <br> vs. <br><br> AFFILIATED FM INSURANCE COMPANY, <br><br> Defendant. | Civil No.: 4:20-cv-00397-JAJ-HCA <br><br><br> AFFIDAVIT FROM MELISSA PAGE RE: PROCESS SERVICE |

COUNTY OF POLK    )
                           )ss.
STATE OF IOWA     )

I, Melissa Page, being duly sworn, depose and state the following:

1. I am over the age of 18 and not a Party to this action.

2. I am a Paralegal with Gourley, Rehkemper & Lindholm, PLC and have been employed with them since 2005.

3. On November 20, 2020, I contacted Rhode Island Constable Ken Vieira and retained him to serve a *Petition at Law and Jury Demand* and *Original Notice* upon Defendant Affiliated FM Insurance Company.

4. Mr. Vieira agreed to provide us with an Affidavit regarding service upon Defendant and his actions in furtherance thereof. However, Mr. Vieira was involved in a car accident this week and was unable to timely provide his written Affidavit to our office. The following is the information that Mr. Vieira provided directly to our office.

5. During his professional experience as a Constable and process server, he had the occasion to serve Affiliated FM Insurance Company, which is in Rhode Island.

6. Defendant Affiliated FM Insurance Company did not have a Registered Agent listed or registered through the Secretary of State of Rhode Island.

1

7.  The first proper legal step is to attempt personal service on Affiliated FM Insurance Company at its registered office and corporate address located at 270 Central Avenue, Johnston, RI 02919.

8.  On November 23, 2020, he attempted personal service upon Affiliated FM Insurance Company at their registered office and corporate address located at 270 Central Avenue, Johnston, RI 02919.

9.  Affiliated FM Insurance Company was closed for business and to third parties due to Rhode Island being under a stay-at-home mandate. As a process server, Mr. Vieira was permitted to leave his home and travel according to the applicable order in effect at the time.

10. He was denied entry to Affiliated FM Insurance Company and could not effectuate service of process at Affiliated FM Insurance Company's corporate office.

11. Since Defendant's corporate office was closed, he was able to serve the Rhode Island Secretary of State and that they would be able to accept service on behalf of Affiliated FM Insurance Company pursuant to the provisions set forth in Title 7 Section 1.2-503 of the General Laws of the State of Rhode Island.

12. On November 30, 2020, our office was provided a notarized Affidavit of Service confirming Mr. Vieira's successful effort to effectuate service upon Defendant Affiliated FM Insurance Company on November 27, 2020.

13. Rhode Island Secretary of State is expressly authorized by statue to accept service of process on corporations whenever a corporation fails to appoint or maintain a registered agent in Rhode Island, or whenever its registered agent cannot with reasonable diligence be found at the registered office.

14. Pursuant to the foregoing and law of the state of Rhode Island, due and proper legal service was effectuated on Affiliated FM Insurance company on November 27, 2020.

Further Affiant sayeth naught.



Melissa Page, Paralegal

Subscribed and sworn to before me by the Affiant who is personally known to me on this ___29___ day of January 2021.

Notary Public in and for State of Iowa

McKAYLA ROSE MOORE
Commission Number 812793
My Commission Expires
September 21, 2021



State of Rhode Island and Providence Plantations
**Department of State | Finance & Personnel Division**
**Nellie M. Gorbea,** *Secretary of State*

EXHIBIT

B

December 8, 2020


Cory F. Gourley
Gourley, Rehkemper & Lindholm, PLC
440 Fairway Drive, Suite 210
West Des Moines, IA 50266


RE: Warehouse Investors, LLC Dixon Properties-3811, LLC and 51st Street Properties,
     LLC

      vs.

      Affiliated FM Insurance Company

To Whom It May Concern:

On November 27, 2020, this office was served with a summons and complaint in the
above-entitled matter. Pursuant to the provisions set forth in Title 7 of the General Laws
of the State of Rhode Island, a copy of the Summons and Complaint was sent via
certified mail on December 2, 2020 to the defendant's registered office or principal office.
Enclosed is a copy of the signed and dated return receipt for your records.

Sincerely,

Barry Chipman
Fiscal Manager
401-222-3040


enc.

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

*Affiliated FM Insurance*
*270 Central Ave.*
*Johnston, RI 02919*

9590 9402 4898 9032 3459 08

2. Article Number *(Transfer from service label)*

7017 0660 0000 7764 8964

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____

☐ Agent
☐ Addressee

B. Received by *(Printed Name)*

C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053

Domestic Return Receipt



## IN THE IOWA DISTRICT COURT FOR POLK COUNTY

Case Number: LACL148584

WAREHOUSE INVESTORS, LLC, DIXON
PROPERTIES - 3811, LLC, and 51st STREET
PROPERTIES, LLC,

Plaintiff(s),

v.

AFFILIATED FM INSURANCE COMPANY,

Defendant(s),

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ACCEPTANCE OF SERVICE

---

Service of the foregoing, ORIGINAL NOTICE, PETITION ET AL, is hereby accepted as provided by the law for AFFILIATED FM INSURANCE COMPANY, defendant named herein, the 20th of Janurary, 2021.

Commissioner of Insurance

Doug Ommen